ESTATE OF SEYBOLD: FUHRMANN, Claimant, Respondent, vs. SEYBOLD, Executrix, Appellant.

*November 10—December 8, 1936.*

For the appellant there were briefs by *Arthur A. Mueller*, attorney, and *Paul H. Paulsen* and *Herbert J. Mueller* of counsel, all of Milwaukee, and oral argument by *Mr. Herbert J. Mueller* and *Mr. Paulsen*.

For the respondent there were briefs by *Lecher, Michael, Whyte & Spohn* of Milwaukee, and oral argument by *George D. Spohn*.

NELSON, J.  All of the facts relating to the plaintiff's claim and to the set-off were stipulated.  So much of the plaintiff's claim as was allowed by the court is not questioned here.  The sole question for determination therefore is whether the court erred in disallowing the set-off.  Only so many of the facts as are necessary to an understanding of this controversy will be stated.

On February 1, 1912, at Fort Wayne, Indiana, the plaintiff's husband, William A. Fuhrmann, made, executed, and delivered to Henrietta Seybold (the present executrix) his promissory note, wherein and whereby, for value received, he promised to pay $1,500 to the latter, or order, one year after date, with six per cent interest until paid.  Interest on the note was paid up to February 1, 1913.  On September 1, 1928, there was paid on the note the sum of $50.  On or about October 1, 1928, Henrietta Seybold indorsed the note by writing her name on the back of it, and the note was found among her husband's papers after his death, which occurred on November 8, 1934.  The amount of such note,

together with interest, computed to February 15, 1935, was $3,483.75. Fuhrmann, the plaintiff's husband, died at the city of Fort Wayne, Indiana, on January 22, 1930. His estate was thereafter probated in the probate court at Allen county, in that state. The note above described was not filed by Seybold as a claim against Fuhrmann's estate, nor was any action brought by Seybold against Fuhrmann's widow (the plaintiff here) as an heir, devisee, or distributee within two years after the final settlement of her husband's estate. Seybold and Fuhrmann were, so long as the latter lived, co-partners doing business under the name of William A. Fuhrmann & Company at Fort Wayne. Upon the death of Fuhrmann, Seybold went to Fort Wayne, and there organized a corporation known as William A. Fuhrmann Company, Inc., which corporation when organized took over the partnership business. The plaintiff, as administratrix of her husband's estate, received two hundred forty-five shares of the stock of the corporation in part payment of the purchase price of her deceased husband's interest in the partnership. On February 22, 1930, as administratrix, she sold, transferred, and delivered to Seybold the two hundred forty-five shares of the common stock of the corporation, for the sum of $5,000. Seybold paid to her, as administratrix, $2,500 in cash and at the same time made, executed, and delivered to her at Fort Wayne, his promissory note for $2,900. The total of the cash and the note amounted to $5,400. The difference between that sum and $5,000, the purchase price of the stock, is accounted for by a contract entered into by them on the same day, the terms of which need not be recited here. Numerous payments were made on that note so that the stipulated balance due thereon as of February 15, 1935, was $1,913.61. The plaintiff's claim included certain other items, concededly correct and owing by Seybold at the time of his death. The following statutes of the state of Indiana

were in full force and effect at the time of the death of Fuhrmann and ever since have been.

"*Extent and nature of liability—Suits and limitations.* The heirs, devisees and distributees of a decedent shall be liable, to the extent of the property received by them from such decedent's estate, to any creditor whose claim remains unpaid, who, six months prior to such final settlement, was insane, an infant or out of the state; but such suit must be brought within one year after the disability is removed. Provided, that suit upon the claim of any creditor out of the state must be brought within two years after such final settlement." Burns' Indiana Statutes Annotated, 1933, volume 3, § 6–1901.

"A party to any action may plead or reply a set-off or payment to the amount of any cause of action or defense notwithstanding such set-off or payment is barred by the statute." Burns' Indiana Statutes Annotated, 1933, volume 2, § 2–1036.

Seybold was a resident of the city of Milwaukee up to the time of his death.

The trial court disallowed the set-off because it was of the opinion that the note signed by Fuhrmann was not a proper and legal set-off against the plaintiff's claim. The court grounded its conclusion upon the following facts: (1) Seybold, although having timely notice of the death of Fuhrmann, did not file the note as a claim against the latter's estate; (2) Seybold did not bring an action against the plaintiff as an heir, devisee, or distributee within two years after the final settlement of her husband's estate, as he might have done pursuant to the provisions of section 6–1901, Indiana Stats., recited above; (3) the indebtedness evidenced by the note against Fuhrmann was not taken into consideration at the time the partnership matters were adjusted and the assets belonging to it were taken over by the corporation organized by Seybold, or at the time Seybold purchased from

the plaintiff as administratrix the two hundred forty-five shares of stock in the corporation; (4) the note was not listed as an asset in the inventory filed by the executrix of the Seybold estate, because, as stated in the objections to the plaintiff's claim, "it had been outlawed previous to the death of the deceased." In our view, the fact that Seybold did not bring an action against the plaintiff as an heir or distributee within two years after the final settlement of her husband's estate, is a sufficient reason for disallowing the set-off.

Sec. 313.05 (2), Wis. Stats. 1935, provides:

"(2) *Claims offset; barred claims.* When a creditor against whom the deceased had claims shall present a claim to the county court the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the court shall ascertain and allow the balance against or in favor of the estate as the same shall be found; but no claim barred by the statute of limitations shall be allowed by the court in favor of or against the estate, as a set-off or otherwise. . . ."

Under that statute, it was the duty of the county court, when passing upon the plaintiff's claim and the claim exhibited by the executrix in offset to it, to determine, (1) whether the claim of the plaintiff was a valid claim against the estate, and (2) whether the claim exhibited by the executrix in offset to it was a valid claim against the plaintiff. The words "claim" and "claims," as used in sec. 313.05 (2), obviously refer to a claim or claims that are good, valid, and subsisting. When the county court determined that the plaintiff's claim should be allowed, it found that her claim was a good, valid, and subsisting claim against the estate. When the court determined that the claim exhibited by the executrix in offset to the plaintiff's claim was not a proper and legal set-off, it found that the note upon which the set-off was based was not a good, valid, and subsisting claim against

the plaintiff. This conclusion in our opinion was correct. The plaintiff was not the maker of the note. Up to the time of the death of her husband she was in no way liable thereon. Up to the time of the settlement of her husband's estate she was still in no way liable. Her only liability to Seybold, assuming that the note was not barred by the statute of limitations and that Seybold was "a creditor out of the state," was that of an heir and distributee, and it was limited "to the extent of the property received" by her from the estate of her husband. That liability was a statutory liability, which ceased absolutely when no action was brought against her within two years after the final settlement of her husband's estate. The right to bring an action against her was limited by the very statute which created the right or cause of action. In the Restatement, Conflict of Laws, p. 722, § 605, the following rule is stated to be the law :

"If by the law of the state which has created a right of action, it is made a condition of the right that it shall expire after a certain period of limitation has elapsed, no action begun after the period has elapsed can be maintained in any state."

The executrix, however, contends that since the note and the contract upon which the plaintiff's claim is based and the note upon which the set-off is based are Indiana contracts, the Indiana law as to set-off should be applied, and that under it (section 2–1036, Indiana Stats., hereinbefore recited, which, so far as here material, provides that a party to any action may plead a set-off notwithstanding such set-off is barred by the statute), her set-off should have been allowed. In our opinion, the contention is not sound. The right of set-off is purely statutory, a right which did not exist at common law. See *Pierce v. Hoffman,* 4 Wis. *277, and numerous cases to the same effect cited to the text in 57 C. J. p. 360, § 3 (2). The law of set-off relates to the remedy and not to

the right, and therefore set-off is governed by the law of the forum, not by the *lex loci contractus*. See cases cited in 57 C. J. p. 376, § 22, note 56.

The law of this state relating to set-off is found in sec. 331.07, Wis. Stats., which in part provides as follows:

"In the following cases a demand by one party may be set off against and as a defense, in whole or in part, to demands by the other:

"(1) It must be a demand arising upon a judgment or upon contract, express or implied, whether such contract be written or unwritten, sealed or without seal; . . .

"(2) It must be due to him in his own right, . . .

"(3) It must have existed at the time of the commencement of the action, and must then have belonged to the party claiming to set off the same."

It is not suggested that the demand of the estate asserted as a set-off arose "upon a judgment or upon contract, express or implied." The asserted right arose by virtue of the Indiana statute, section 6–1901, and existed only during the time limited therein. It therefore had no existence at the time the plaintiff filed her claim.

In our view, section 6–1901 is not a statute of limitations. No decision of the Indiana supreme court so holding has been called to our attention and none has been found by us. Section 6–1901, properly construed, is a statute which creates a cause of action against an heir, devisee, or distributee of an estate for a limited time only. In *Fisher v. Tuller*, 122 Ind. 31, 23 N. E. 523, 525, it was said regarding this statute:

"The *right* of the appellant to prosecute an action against the appellee is statutory. . . . We can see no escape from the plain language of this statute. . . . The statute which gives the *right* contains its own limitations, and we can engraft no exceptions upon it. The language is clear and sweeping, and no exceptions are created; nothing remains for the courts but to apply the law as it is written.

"If there were a common-law right to hold the heir liable for the debts of an ancestor, there might be some plausibility in appellant's argument, but there is no such common-law right. American Law of Administration, sec. 574. The appellant must, therefore, take the *statutory right* as it is bestowed, for he has no other."

In *Clevenger v. Matthews,* 165 Ind. 689, 76 N. E. 542, 543, it was said:

"All the *right,* then, that an unpaid creditor of the ancestor has to pursue property in the hands of heirs is conferred by the following statute: [Quoting it.] The *right* here bestowed by the legislature, being in derogation of the common law, to be enjoyed, the plaintiff must bring himself, without excuse, fully within the conditions upon which the right rests." Citing and quoting from *Fisher v. Tuller, supra.*

From these decisions, it appears that the Indiana supreme court considers section 6–1901 as a statute that creates a right and does not consider it as a statute of limitations. The basis of the executrix's contention is that section 6–1901 is a statute of limitations which bars recovery on the note but does not, under section 2–1036, Indiana Stats., prevent the notes being pleaded as a set-off. For the reasons stated, we consider the contention unsound.

*By the Court.*—Judgment affirmed.